**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| AXIOM SPACE, INC., | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:26-cv-02931 |
| v. | § | |
| | § | **JURY DEMANDED** |
| RAMZI MASRI-ELYAFAOUI, | § | **TRO, PRELIMINARY** |
| Defendant. | § | **INJUNCTION, AND PERMANENT** |
| | § | **INJUNCTION REQUESTED** |

## <u>AMENDED COMPLAINT</u>

### INTRODUCTION

1.      Plaintiff Axiom Space, Inc. ("Axiom Space" or the "Company") is the leading provider of human spaceflight services and developer of human-rated space infrastructure. The Company developed the first commercial space station, Axiom Station, which is targeted for launch in 2028 and is designed to succeed the International Space Station by 2030. Axiom Space acts as a primary provider of Private Astronaut Missions to the International Space Station, and the Company is developing the next generation Artemis spacesuits, which are targeted for a 2027 flight test.

2.      Given the unique nature of its business, Axiom Space's primary customers include U.S. and international governmental entities, and it regularly interacts with regulatory agencies. In the ordinary course of its operations, Axiom Space engages in sensitive and complex interactions with individuals and entities that influence governmental purchasing decisions, including United States and international government officials. These are the majority of Axiom Space's customers. Axiom Space competes intensely with a limited number of firms that offer competing products

and services, sell to governmental entities, and similarly maintain sensitive relationships with government officials.

3.    Axiom Space's business depends on safeguarding the highly confidential and competitively sensitive information the Company has devoted substantial time and resources to develop. Axiom Space places trust in its employees, and the Company holds them accountable when they handle this type of sensitive information and important property—all of which support vital missions in space exploration. To protect the Company's highly confidential and competitively sensitive information, when they are hired, employees of Axiom Space acknowledge they are receiving critical and competitively sensitive information, acknowledge their relationship of trust with the Company and their duty to the Company to safeguard the confidential information, and agree not to use or disclose it. Employees further agree that, because of their access to Axiom Space's highly confidential and competitively sensitive information, they will not work for a competing firm or solicit the Company's customers for a one-year period. Employees expressly acknowledge that this limited post-employment restriction is reasonable and essential to enabling Axiom Space to protect its proprietary interests and advance its work in the space industry. Axiom Space memorializes these commitments in its Employee Confidential Information and Invention Assignment Agreement ("CIIAA").

4.    Axiom Space brings this action against its former employee, Ramzi Masri-Elyafaoui ("Masri-Elyafaoui" or "Defendant"), who has willfully violated the terms of the valid and binding CIIAA that he executed.

5.    Masri-Elyafaoui served first as Axiom Space's Government Relations Manager and was subsequently promoted to Senior Policy Advisor, positions in which he was entrusted with highly confidential and competitively sensitive information concerning Axiom Space's sales to,

2

and interactions with, key customers, including United States government agencies, as well as individuals who influence those customers' purchasing decisions, including United States legislators. Masri-Elyafaoui obtained detailed highly confidential and competitively sensitive information about Axiom Space's political strategy, legislation and rule-making strategy, competitive positioning, government-relations initiatives, and strategic business plans and pricing. Although trained as a lawyer, Defendant was never part of the legal department of Axiom Space; nor did he practice law on behalf of Axiom Space or otherwise provide legal advice to the Company at any point during his employment.

6.      On April 10, 2026, Masri-Elyafaoui gave notice to terminate his position at Axiom Space and to accept a position with Vast, Inc. ("Vast"), Axiom Space's direct competitor in the commercial-space-station and the Private Astronaut Mission ("PAM") market. This conduct constitutes a violation and continuing breach of Masri-Elyafaoui's CIIAA, which prohibits him from working for a competing business for a period of one year following his separation from Axiom Space. On April 20, 2026, Masri-Elyafaoui joined Vast and then proceeded to further flout his obligations under the CIIAA by disclosing Axiom Space's highly confidential information and soliciting Axiom Space's customers.

7.      Axiom Space seeks injunctive relief to enforce the noncompetition, non-solicitation, and confidentiality provisions of Masri-Elyafaoui's CIIAA and to prevent irreparable harm to Axiom Space's business interests. In doing so, Axiom Space alleges the following:

## NATURE OF THE ACTION

8.      This is an action under Texas law arising from Defendant's act of using and disclosing Axiom Space's confidential information while working for Axiom Space's direct

3

competitor and soliciting Axiom Space's customers for that competitor in violation of Defendant's CIIAA.

## PARTIES

9.      Axiom Space is a corporation organized under the laws of Delaware, with its principal place of business in Houston, Texas.

10.      Defendant Ramzi Masri-Elyafaoui served as Axiom Space's Government Relations Manager from October 2023 to September 2025 and served as Senior Policy Advisor from September 2025 until his departure from Axiom Space on April 10, 2026. In connection with his employment, Masri-Elyafaoui executed Axiom Space's CIIAA, which imposes confidentiality obligations, requires the immediate return of company property upon separation, and includes a one-year non-compete and non-solicitation provision. The CIIAA includes Masri-Elyafaoui's express consent to jurisdiction and venue in Texas courts. Masri-Elyafaoui is an individual whose last known location is 2717 Harrington Rd., Chester, MD 21619.

## JURISDICTION AND VENUE

11.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Axiom Space's lost profits and the value of its confidential information placed at risk by Defendant's actions exceed $75,000.

12.      Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in this District. Defendant consented to Texas jurisdiction and venue in his CIIAA, and the CIIAA authorizes Axiom Space to seek relief in Texas courts.

13.　　The CIIAA is governed by Texas law and was negotiated, executed, and performed in substantial part in Texas. Axiom Space performed under the CIIAA from its headquarters in Houston, Texas, including developing, maintaining, securing, and controlling the Confidential Information at issue and providing Defendant access to that information through Texas-based systems. Unauthorized use or disclosure of this information causes injury to Axiom Space in Texas.

## FACTUAL ALLEGATIONS

### NASA Has Announced a Once-in-an-Industry Transition.

14.　　For more than two decades, the International Space Station ("ISS") has served as the primary platform for U.S. human spaceflight, microgravity research, and technology development in low-Earth orbit ("LEO"). NASA has announced that the ISS is approaching the end of its operational life and plans to retire and deorbit the station in the coming years. In anticipation of that retirement, NASA has adopted a formal policy to transition away from government-owned orbital infrastructure and toward a commercially operated LEO ecosystem.

15.　　To implement this transition, NASA launched the Commercial Low-Earth Orbit Destinations ("CLD") program, under which private companies are developing commercially owned and operated space stations that will assume the functions historically performed aboard the ISS. Under this model, NASA has made clear that it intends to act as an anchor customer rather than as an owner or operator, purchasing services such as crew time, research capacity, and technology demonstration from commercial providers. NASA has stated that this approach is

intended to ensure continuity of U.S. human spaceflight operations, reduce government costs, and stimulate a competitive commercial marketplace in LEO.

16.    NASA has further emphasized that competition among commercial space-station providers is a central objective of the CLD program. To that end, the agency has supported multiple private entities during design and development. NASA and the United States Congress has warned of the risk of a gap in U.S. crew-capable orbital infrastructure if at least one commercial replacements is not operational before the ISS is retired, making schedule, technical readiness, and operational planning critically important in this emerging market.

17.    As a result of the impending retirement of the ISS, the market for commercial space stations has become both time-constrained and highly competitive. A limited number of companies are racing to achieve technical maturity, regulatory approvals, and customer commitments before the ISS is deorbited. In this environment, access to proprietary technical, strategic (including strategic approaches to rapidly-evolving-government-regulatory programs and customers), and programmatic information carries substantial competitive value. Information concerning station architecture, development timelines, government engagement strategy, customer interfaces, and workforce deployment is closely guarded within the industry, with government-relations personnel playing a key role in developing and leveraging this confidential information. Axiom Space is a leading participant in this commercial-space-station market.

**Axiom Space Is an Industry Leader.**

18.    Axiom Space is a pioneering American aerospace company headquartered in Houston, Texas, focused on advancing human space exploration through the development of commercial space infrastructure. Founded in 2016 by Michael Suffredini, a former NASA ISS Program Manager, and Kam Ghaffarian, the company aims to create a thriving ecosystem in LEO.

6

Axiom Space is in the process of constructing the world's first commercial space station, Axiom Station. And the company has already made significant strides, including orchestrating four private astronaut missions to the ISS as well as developing next-generation spacesuits for NASA that the Artemis Astronauts will use to walk on the Moon for the first time since the Apollo program. Its efforts are driven by a mission to expand access to space for research, manufacturing, and human habitation.

19.    Axiom Space has achieved several notable milestones and garnered recognition for its innovative contributions. In 2020, it successfully completed the System Requirements Review for Axiom Station with NASA, marking a critical step in its development. The company made history in April 2022 with the Ax-1 mission, the first all-private astronaut mission to the ISS. This mission paved the way for future private spaceflight endeavors. In 2022, Axiom Space was awarded NASA's first task order to design and to build next-generation spacesuits for the Artemis program, highlighting its role in supporting lunar exploration. In April of 2026, Time Magazine named Axiom Space as one of the 10 most influential frontiers companies of 2026 alongside other major United States industrial leaders such as SpaceX and IBM.

20.    Axiom Space is celebrating its tenth anniversary in 2026, marking a decade of advances in private astronaut missions, spacesuit development, space station construction, and philanthropic initiatives. For example, its Science, Technology, Art, and Research in Space Scholarship—launched in 2021—awarded $1,000 grants to students for innovative microgravity research proposals, underscoring Axiom Space's commitment to education and innovation. Axiom Space is a recognized trailblazer in the emerging commercial space economy. Its growth and

accomplishments have been acknowledged across government and industry, and its Houston headquarters has become a center of gravity for commercial LEO activity.

21. The scope of Axiom Space's business centers on competing for opportunities directed to commercial space stations in LEO and PAMs. Axiom Space also has a business segment for spacesuits supporting the Artemis program but that segment does not have a direct competitor. Only a handful of companies have the technical capability to compete for commercial-space-station and PAM opportunities. And fewer still are actively seeking out these opportunities. Vast is one of those companies, and the other is Voyager Technologies Inc. ("Voyager"). Far from an area with robust commoditized competition among many aerospace companies—Axiom Space engages in a narrow segment of the larger space industry with only three active competitors credibly seeking these opportunities. And to provide greater context, this narrow market segment does not include as part of its scope any of the following space opportunities: rockets, launch technologies, lunar missions, cargo missions (which do not involve humans), and satellites.

22. Upon information and belief, Vast has existed since 2021—roughly half the length of time that Axiom Space has spent investing in the development of its technology, industry relationships, and procurement strategies, and establishing itself as an industry leader during this once-in-a-generation transition. In contrast to Axiom Space's nearly decade-long effort to build a commercial space station from the ground up, Vast is pursuing an approach that has not yet achieved comparable levels of technical maturity, regulatory approval, or established customer relationships. Vast's competitive position therefore depends, in significant part, on acquiring the

institutional knowledge and strategic advantages that companies such as Axiom Space have developed through years of sustained investment by employees and partners.

23.    At all relevant times during the Company's ten-year history, Axiom Space has been headquartered in and has conducted and continues to conduct business in Harris County, Texas, with additional business activity in Washington, D.C.

**Axiom Space Maintains and Safeguards Confidential Information.**

24.    As a byproduct of its industry-leading efforts, Axiom Space has developed, documented, trained on, enforced, and thereby protected valuable confidential information, including but not limited to political and regulatory compliance strategies; legislative strategies; trade secrets; processes, procedures, and training protocols; financial plans and financial projections; strategic pricing information; proprietary customer lists; and procedures for conducting medical research in conditions of microgravity—any and all of which derive independent economic value from their secrecy and are subject to reasonable efforts to maintain confidentiality (collectively, the "Confidential Information"). The Confidential Information is developed, housed, maintained, stored, and curated in Houston, Texas at Axiom Space's headquarters facility. Axiom Space performs under the CIIAAs in Texas by providing access to the Confidential Information in Texas to its employees and agents for them to use the Confidential Information. Unauthorized use or disclosure of this Confidential Information causes immediate competitive harm to Axiom Space in Texas, where the information is stored, managed, safeguarded, and exploited for competitive advantage.

25.    Axiom Space's commercial success rests on information assets that competitors cannot replicate without access to Axiom Space's internal work product. The Confidential Information derives independent economic value from not being generally known and is subject

9

to robust protective measures including CIIAAs, non-disclosure agreements ("NDAs"), need-to-know access, two-factor authentication on model repositories, marked confidentiality legends, IT security and threat monitoring, and return-of-property obligations at separation.

26. When doing business and sharing information with the United States, Axiom Space does so under the protections of the Trade Secrets Act, *see* 18 U.S.C. § 1905, which criminalizes the unauthorized disclosure of confidential information, including trade secrets, by government employees or certain private sector employees assigned to federal agencies. And when doing business and sharing information with foreign companies and countries, Axiom Space does so under NDAs to maintain confidentiality and secrecy.

27. As discussed above, the commercial space station industry is intensely competitive, with only a limited number of companies capable of competing for government contracts and commercial partnerships in this specialized market.

**Axiom Space Employed Masri-Elyafaoui in a Senior Government-Facing Role.**

28. Masri-Elyafaoui was employed by Axiom Space as Axiom Space's Government Relations Manager from October 2023 to September 2025 and served as Senior Policy Advisor since September 2025.

29. In his role, Masri-Elyafaoui was central to, and a leader for, Axiom Space's political, legislative, and rulemaking strategy, including its efforts on Capitol Hill, with regulatory agencies, the State Department, the Commerce Department, and with the White House. Masri-Elyafaoui also communicated and worked with NASA individuals located in Texas as well as representatives from the Texas Congressional Delegation. Masri-Elyafaoui served as a strategic thought partner to Axiom Space's Chief Global Policy Officer and Vice President of Government Relations in developing the Company's government-relations strategies—including strategies to

10

secure appropriations language, target legislative champions, engage regulatory agencies, and competitively position Axiom Space against its rivals. Axiom Space's government-relations function is critical to the Company's survival because government-relations personnel are the individuals who make the case to legislators and regulators to support the Company's three core business lines: commercial space station development, private astronaut missions, and the Artemis spacesuit program. Axiom Space maintained a policy of open communication within its government-relations team. Information was not siloed within this group; nor was this group siloed from Axiom Space's commercial outreach, not least because governments are Axiom Space's customers. Masri-Elyafaoui was fully integrated into Axiom Space's broad strategic discussions and Axiom Space's tactical execution plan development, and he had access to the full breadth of Confidential Information shared within the Company.

30.     By virtue of his position, Masri-Elyafaoui had access to and knowledge of Axiom Space's most sensitive Confidential Information, including competitive analysis regarding Axiom Space's competitors, the status of Axiom Space's space station program, legislation and rulemaking strategies, customer information, messaging strategies, and other strategic initiatives. For example, Masri-Elyafaoui had access to and/or used non-public information on pricing strategies borne out over a decade of experience; information on foreign countries with whom Axiom Space has had (as well as plans to have) relationships; information shared with governments touching on national security, foreign relations, and U.S. geopolitical supremacy; competitive advantages and disadvantages of Axiom Space's commercial space stations and posture as to PAMs; and strategies around responding to competitive solicitations for commercial offerings. This information was not generic industry knowledge but internally developed competitive and governmental strategy unique to Axiom Space.

31. Masri-Elyafaoui's role required him to develop deep familiarity with Axiom Space's competitive positioning vis-à-vis its rivals in the commercial space station market, including Vast.

32. Masri-Elyafaoui, though legally trained, never once provided legal advice to Axiom Space, acted as an attorney on behalf of Axiom Space, or performed legal services for Axiom Space. His role was limited to government relations and not the practice of law.

**Masri-Elyafaoui Executed a Noncompete and Confidentiality Agreement.**

33. As a condition of his employment with Axiom Space, Masri-Elyafaoui executed a CIIAA on October 10, 2023. The CIIAA constituted a valid, enforceable contract between Axiom Space and Masri-Elyafaoui. In doing so, Masri-Elyafaoui agreed that the terms of the CIIAA are reasonable and necessary for Axiom Space to protect the Company's assets. The restrictive covenants in the CIIAA are ancillary to and designed to protect Axiom Space's Confidential Information and goodwill and are reasonable in time, scope, and subject matter under Texas law.

34. The CIIAA required that Masri-Elyafaoui hold in confidence and not disclose or use any Confidential Information, except as required in connection with his work for Axiom Space. Specifically, the CIIAA required perpetual confidentiality; immediate return and no retention of company information at separation; assignment of all intellectual property developed during the scope of employment; one-year non-solicitation of Axiom Space employees, contractors, customers, and potential customers; one-year post-employment non-compete; and an injunctive-relief carve-out thereby authorizing Axiom Space to seek court-ordered injunctions in Texas. The CIIAA recognizes that misuse of Axiom Space's Confidential Information causes immediate and irreparable injury, entitling Axiom Space to equitable relief to prevent it. And Masri-Elyafaoui agreed to all this as a condition of his employment and in consideration for his

compensation. The CIIAA did not require or otherwise discuss performance beyond how to handle the Confidential Information.

35. The CIIAA contains a one-year noncompete clause and a similar non-solicitation clause. Anyone with familiarity with Axiom Space's business, including Defendant, would have known that the CIIAA's scope restriction was limited to not working for direct competitors in areas of commercial space stations and PAMs. And the competitors at issue in this context are Vast and Voyager. And as to the geographic limitation, the parties understood that the jurisdictions at all times relevant in which Axiom Space did (and does) business include Harris County and Washington, D.C.

36. The CIIAA has a valid and enforceable integration clause whereby the parties agreed that the four corners of the CIIAA was the entire agreement among the parties.

37. Masri-Elyafaoui negotiated and executed the CIIAA while residing in his domicile of Maryland. Axiom Space negotiated and executed the CIIAA from Houston. Axiom Space performed under the CIIAA in Houston, while Masri-Elyafaoui's performance did not depend on geography then or now. All understood that the subject matter and nexus of the CIIAA resided in Houston, where the Confidential Information was created, maintained, and protected.

**Masri-Elyafaoui Accepted Mirror-Image Employment with Vast.**

38. On April 10, 2026, Masri-Elyafaoui notified Axiom Space of his intention to leave Axiom Space and his acceptance of a position with Vast. Masri-Elyafaoui joined Vast on April 20, 2026.

39. Vast is a direct competitor of Axiom Space in the commercial space station market as well as the PAM market. Both companies are competing for the same limited pool of government contracts and commercial partnerships in the commercial low-Earth orbit sector.

40. Masri-Elyafaoui's acceptance of employment with Vast constitutes a direct violation of his CIIAA, which prohibits him from working for a competing business for one year following his separation from Axiom Space.

41. Axiom Space has not consented to Masri-Elyafaoui's employment with Vast, nor has Axiom Space waived any of its rights under the CIIAA.

42. By virtue of his position at Axiom Space, Masri-Elyafaoui possesses detailed knowledge of Axiom Space's political, legislative, rulemaking, and regulatory strategies, competitive positioning, customer relationships, and strategic business plans.

43. The disclosure of Axiom Space's Confidential Information to Vast has and will cause irreparable harm to Axiom Space that cannot be adequately compensated by monetary damages.

44. Because of the specialized nature of the commercial space station industry and the limited number of competitors, even the appearance that Axiom Space's Confidential Information has been shared with a competitor could damage Axiom Space's relationships with government agencies, partners, and customers. What is more, in undertaking to become an employee of Axiom Space, Defendant understood that the trust Axiom Space placed within him also necessarily meant that he needed to abide by all the terms of the CIIAA as part of the bargain to gain access to important information affecting competition in the space industry. In doing so, Defendant owed a duty of trust and loyalty to Axiom Space extended by the provisions to which he agreed under the CIIAA.

**Masri-Elyafaoui Has Already Misused and Improperly Disclosed Confidential Information in Violation of the CIIAA.**

45. Masri-Elyafaoui's role with Vast requires that he improperly disclose and use Axiom Space's Confidential Information for the benefit of a direct competitor. His role also

14

requires that he breach his ongoing duty of trust to Axiom Space because of the direct overlap in roles. Moreover, by performing government-relations and policy functions for Vast directed at the same government agencies that were Axiom Space's actual and potential customers during his employment, Masri-Elyafaoui is soliciting and engaging with Axiom Space's customers and potential customers in direct violation of the CIIAA's one-year non-solicitation provision.

46.    On March 25, 2026, NASA issued a Request for Information ("RFI") to inform its forthcoming Request for Proposal ("RFP") for a CLD. As noted above, there are three credible competitors for this substantial RFP, including Axiom Space and Defendant's new employer. Mere days after the RFI issued, Defendant actively participated in highly confidential meetings and was engaged in the development of strategy involving Axiom Space's response to the RFI in order to optimize Axiom Space's strategic positioning for the ultimate response to the RFP. In doing so, Defendant became privy to the strategy that Axiom Space intends to use for the solicitation. On information and belief, Defendant is now advising Axiom Space's direct competitor on countervailing strategies for the exact same solicitation. And to be clear: the CLD RFP is critical to those handful of companies seeking commercial-space-station development, not least because these opportunities are finite, with billions of dollars at stake to succeed the ISS after NASA retires that institution.

47.    Additionally, on April 22, 2026, only four days into his employment at Vast, Defendant—now representing Vast—was present at a hearing of the U.S. House Committee on Science, Space, and Technology on NASA's budget. This is precisely the type of government engagement that Masri-Elyafaoui performed on Axiom Space's behalf and that the CIIAA's non-solicitation and confidentiality provisions were designed to prevent. Masri-Elyafaoui's effectiveness in performing government-relations work for Vast necessarily depends on the

15

confidential strategy and information he acquired at Axiom Space, including his knowledge of Axiom Space's positions on NASA funding, its legislative strategy, and its competitive advantages vis-à-vis Vast.

48.     And most striking, in litigation filings before this Court, Defendant disclosed publicly Axiom Space Confidential Information, the substance of which is now subject to redaction.

49.     On information and belief, Defendant has already improperly disclosed and misused Axiom Space Confidential Information while advocating on behalf of Vast to secure strategic positioning before Axiom Space's customers, business partners, and industry-association participants.

**FIRST CAUSE OF ACTION: Breach of Contract (Noncompete)**

50.     Axiom Space incorporates all preceding and succeeding paragraphs as if fully set forth here.

51.     During the period of his tenure at Axiom Space, Defendant was bound by the CIIAA that constituted a valid, enforceable contract between the parties. The CIIAA contained a one-year post-employment noncompete provision.

52.     Defendant's employment with Vast immediately following his employment with Axiom Space results in a clear violation of the noncompete provision of the CIIAA because Defendant accepted employment with a direct competitor within one year of his employment with Axiom Space.

53.     Axiom Space performed its obligations under the CIIAA during Defendant's employment with Axiom Space.

54.     By accepting employment with Vast, a direct competitor of Axiom Space, Defendant has breached and continues to breach the CIIAA.

55.     Defendant's breaches of the CIIAA proximately caused Axiom Space to suffer irreparable harm to its business and intellectual property.

56.     There is no remedy at law adequate to prevent the irreparable harm caused by Defendant's breaches, thereby necessitating the entry of injunctive relief.

**SECOND CAUSE OF ACTION: Breach of Contract (Misuse of Confidential Information)**

57.     Axiom Space incorporates all preceding and succeeding paragraphs as if fully set forth here.

58.     During the period of his tenure at Axiom Space, Defendant was bound by the CIIAA that constituted a valid, enforceable contract between the parties. The CIIAA contained provisions restricting Defendant from disclosing Axiom Space's Confidential Information and contained confidence and non-solicitation provisions.

59.     Defendant's employment with Vast immediately following his employment with Axiom Space results in a clear violation of these provisions because Defendant accepted employment with a direct competitor in a role that now requires him to access and use the Confidential Information with which Axiom Space entrusted him in confidence.

60.     For example, Defendant disclosed non-public strategic and competitive Confidential Information subject to confidentiality protections under the CIIAA in a filing before this Court. That disclosure breached his contractual obligation to Axiom Space.

61.     Axiom Space performed its obligations under the CIIAA during Defendant's employment with Axiom Space.

62.     By accepting employment with Vast, a direct competitor of Axiom Space, Defendant has breached and continues to breach the CIIAA.

63.     Defendant's breaches of the CIIAA proximately caused Axiom Space to suffer irreparable harm to its business and intellectual property.

64.     There is no remedy at law adequate to prevent the irreparable harm caused by Defendant's breaches, thereby necessitating the entry of injunctive relief.

**THIRD CAUSE OF ACTION: Breach of Contract (Duty of Trust)**

65.     Axiom Space incorporates all preceding and succeeding paragraphs as if fully set forth here.

66.     During his tenure as Government Relations Manager and Senior Policy Advisor at Axiom Space, Defendant was placed in a position of trust and, therefore, owed fiduciary duties of loyalty and fidelity to Axiom Space in carrying out his job duties for the Company. These duties of trust and loyalty arise from and are defined by the CIIAA and the confidential relationship established thereunder.

67.     The CIIAA memorialized this position of trust as to safeguarding and protecting Axiom Space's Confidential Information. This trust relationship extends beyond Defendant's employment with Axiom Space and includes duties of loyalty and confidentiality.

68.     Defendant was entrusted with Axiom Space's most sensitive Confidential Information regarding its political strategy, competitive positioning, and strategic business plans.

69.     By accepting employment with a direct competitor while in possession of Axiom Space's Confidential Information, Defendant breached this contractual trust relationship with Axiom Space because his new role requires him to access and use Axiom Space's Confidential Information.

70.    As the direct and proximate result of Defendant's breach, Axiom Space has suffered and continues to suffer irreparable harm to its business and intellectual property.

71.    There is no remedy at law adequate to prevent the irreparable harm caused by Defendant's breaches, thereby necessitating entry of injunctive relief.

**FOURTH CAUSE OF ACTION: Breach of Contract (Non-Solicitation)**

72.    Axiom Space incorporates all preceding and succeeding paragraphs as if fully set forth here.

73.    During the period of his tenure at Axiom Space, Defendant was bound by the CIIAA that constituted a valid, enforceable contract between the parties. The CIIAA contained a one-year post-employment non-solicitation provision that prohibited Defendant from directly or indirectly soliciting Axiom Space's employees, contractors, customers, and potential customers.

74.    By accepting employment with Vast in a government-relations and policy role, Defendant is required to solicit and engage with the same government agencies, legislators, and regulatory bodies that constituted Axiom Space's actual and potential customers during Defendant's employment. These include, but are not limited to, NASA, members of the U.S. Congress and their staff, the White House, and other government stakeholders with whom Defendant developed relationships on Axiom Space's behalf. Defendant's performance of overlapping government-relations functions for Vast necessarily involves soliciting Axiom Space's customers and potential customers in violation of the non-solicitation provision of the CIIAA.

75.    Axiom Space performed its obligations under the CIIAA during Defendant's employment with Axiom Space.

76.    By soliciting Axiom Space's customers and potential customers through his government-relations role at Vast, Defendant has breached and continues to breach the non-solicitation provision of the CIIAA.

77.    Defendant's breaches of the CIIAA's non-solicitation provision have proximately caused Axiom Space to suffer irreparable harm to its business, customer relationships, and competitive position in the commercial space industry.

78.    There is no remedy at law adequate to prevent the irreparable harm caused by Defendant's breaches, thereby necessitating entry of injunctive relief.

REQUEST FOR RELIEF

Axiom Space respectfully requests that this Court:

A. Issue a preliminary and permanent injunction enjoining Defendant from:

(i) Commencing or continuing employment with Vast, Inc. or any other business that competes with Axiom Space for the duration of the restricted period under the CIIAA;

(ii) Using or disclosing any of Axiom Space's Confidential Information;

(iii) Soliciting, engaging with, or performing services directed to any of Axiom Space's actual or potential customers, including government agencies, legislators, and regulatory bodies, for the duration of the restricted period under the CIIAA; and

(iv) Committing further violations of the CIIAA;

B. Award Axiom Space reasonable attorney's fees and costs as permitted by law;

C. Grant such other and further relief as the Court deems just and proper.

20

D. Axiom Space expressly reserves all rights to pursue monetary damages and other arbitrable relief in arbitration and seeks only equitable relief within this action.

## DEMAND FOR JURY TRIAL

Axiom Space demands a trial by jury on all issues so triable.

*        *        *        *

Dated: April 30, 2026

Respectfully submitted,

KING & SPALDING LLP

*/s/ Jesse Snyder*

Jesse Snyder (Attorney in Charge)
Texas Bar No. 24083884
1700 Pennsylvania Avenue, NW Suite 900
Washington, DC 20006-4707
Telephone: 202.737.0500
Facsimile: 202.626.3737
jsnyder@kslaw.com

Veronica Moyé
Texas Bar No. 24000092
Mu Lin Hsu
Texas Bar No. 24106118
2601 Olive Street Suite 2300
Dallas, TX 75201
Telephone: 214.764.4600
Facsimile: 214.764.4601
vmoye@kslaw.com
chsu@kslaw.com

**Attorneys for Axiom Space, Inc.**

21