**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| AXIOM SPACE, INC., | § | |
| Plaintiff, | § | Civil No. 4:26-cv-02931 |
| | § | |
| v. | § | **TRO, PRELIMINARY** |
| | § | **INJUNCTION, AND** |
| RAMZI MASRI-ELYAFAOUI, | § | **PERMANENT** |
| Defendant. | § | **INJUNCTION REQUESTED** |

**<u>PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION</u>**

Dated June 12, 2026

Respectfully submitted,

KING & SPALDING LLP

*/s/ Jesse Snyder*
Veronica Moyé
Texas Bar No.
24000092
Mu Lin Hsu
Texas Bar No.
24106118
2601 Olive Street Suite 2300
Dallas, TX 75201
Telephone: 214.764.4600
Facsimile:
214.764.4601
vmoye@kslaw.com
chsu@kslaw.com

Jesse Snyder
Texas Bar No.
24083884
1700 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20006-4707
Telephone: 202.737.0500
Facsimile: 202.626.3737
jsnyder@kslaw.com


**Attorneys for Axiom Space, Inc.**

# TABLE OF CONTENTS

CONCISE SUMMARY AS DIRECTED BY THE COURT'S PROCEDURES .....1

ARGUMENT ........................................................................................................3

    A.   Texas Law Governs the Agreement. ..............................................4

        1.   The Applicable Choice of Law Analysis Under § 188. .............4

        2.   The CIIAA Is Distinct from other Documents Governing Defendant's Employment. ...............................................................................4

        3.   Application of the § 188 Factors. ..............................................7

    B.   The Noncompete Is Enforceable Under Texas Law. ....................12

    C.   Defendant's Remaining Arguments Fail. ......................................15

        1.   Defendant Breached His Confidentiality Obligations. .............15

        2.   Defendant Breached His Non-Solicitation Obligations. ...........16

        3.   Defendant Breached His Duty of Trust. ....................................17

        4.   All Other Considerations Warrant Entry of an Injunction. ........18

CONCLUSION .................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*,
209 S.W.3d 644 (Tex. 2006) ...............................................................................12

*Aperia Sols., Inc. v. eVance, Inc.*,
No. 3:18-CV-03276-X, 2022 WL 16935241 (N.D. Tex. Nov. 14,
2022) .................................................................................................................2, 8

*Cardoni v. Prosperity Bank*,
805 F.3d 573 (5th Cir. 2015) ............................................................................4, 6

*Chartwell Pharms. LLC v. Woodfield Pharm., LLC*,
No. CV H-20-3640, 2022 WL 21825790 (S.D. Tex. June 17, 2022)
(Hittner, J.) .......................................................................................................7, 9

*Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*,
94 S.W.3d 163 (Tex. App.—Houston [14th Dist.] 2002, no pet.) .....................10

*Daily Instruments Corp. v. Heidt*,
998 F. Supp. 2d 553 (S.D. Tex. 2014).........................................................18, 19

*Expedited Freight, LLC v. Feichter*,
No. 3:25-CV-172, 2025 WL 2612731 (S.D. Tex. Aug. 4, 2025).........1, 2, 11, 14

*Exxon Mobil Corp. v. Drennen*,
452 S.W.3d 319 (Tex. 2014) ...............................................................................6

*First Command Fin. Planning, Inc. v. Velez*,
No. 4:16-CV-01008-O, 2017 WL 2999405 (N.D. Tex. May 8,
2017) ...................................................................................................................16

*Haynsworth v. The Corp.*,
121 F.3d 956 (5th Cir. 1997) .............................................................................10

*Homolka v. Clark*,
No. CV H-09-151, 2010 WL 11468921 (S.D. Tex. May 11, 2010)
(Hittner, J.), *aff'd by* 416 F. App'x 408 (5th Cir. 2011)...............................11, 12

*Infrasource Constr., LLC v. Sturgis Mat Co.*,
  No. 4:19-CV-2672, 2021 WL 1200891 (S.D. Tex. Feb. 26, 2021)..............10, 11

*Priority Int'l Animal Concepts, Inc. v. Bryk*,
  No. 12-C-0150, 2012 WL 1854121 (E.D. Wis. May 21, 2012)..........................9

*Ramachandran v. Jain*,
  No. 3:18-CV-00811-X, 2022 WL 102612 (N.D. Tex. Jan. 11,
  2022) ......................................................................................................1, 4

*Realogy Holdings Corp. v. Jongebloed*,
  957 F.3d 523 (5th Cir. 2020) .......................................................................4, 12

*Samenow v. Citicorp Credit Servs., Inc.*,
  253 F. Supp. 3d 197 (D.D.C. 2017)...................................................................13

*Steiner v. Am. Friends of Lubavitch (Chabad)*,
  177 A.3d 1246 (D.C. 2018) ............................................................................ 15

*Sunrgy, LLC v. Alfaro*,
  No. 4:24-CV-3583, 2024 WL 4953430 (S.D. Tex. Dec. 3, 2024) .....................13

*TransPerfect Translations, Inc. v. Leslie*,
  594 F. Supp. 2d 742 (S.D. Tex. 2009)............................................................5, 8

*Umana v. Swidler & Berlin, Chartered*,
  745 A.2d 334 (D.C. 2000) ................................................................................13

**Statutes**

D.C. Code 32-581 ........................................................................................4, 12

Tex. Bus. & Com. Code § 15.50.....................................................................13, 18

Tex. Bus. & Com. Code § 15.51.................................................................3, 14, 18

**Other Authorities**

Restatement (Second) of Conflict of Laws § 188.............................................*passim*

iii

**CONCISE SUMMARY AS DIRECTED BY THE COURT'S PROCEDURES**

Axiom Space, Inc. respectfully submits this Reply in Support of its Motion for Preliminary and Permanent Injunction ("Motion") to enforce the Confidential Information and Invention Assignment Agreement ("CIIAA," Sealed Dkt. 15-1). Defendant Ramzi Masri-Elyafaoui's arguments in opposition fail for these reasons.

**First**, this Court should apply Texas law and grant Axiom Space's Motion because Defendant's opposition rests on a legally incorrect and factually incomplete application of Restatement (Second) Conflicts of Law § 188. This section does not treat a single party's *partial* place of performance as dispositive, nor does it disregard both the other party's place of performance and Defendant's own split performance across jurisdictions. The CIIAA is separate and distinct from any document or agreement governing Defendant's employment: it is a standalone confidentiality, noncompete, and non-solicitation agreement designed to protect the interests of Axiom Space whose performance under the CIIAA is centered in Houston.[1] After all, under a "non-competition agreement" that is ancillary to a restrictive-covenant agreement protecting business interests, a "[former employer] performed by giving [former employee] the proprietary information and contacts he needed to fulfill his role." *Expedited Freight, LLC v. Feichter*, No. 3:25-CV-172, 2025 WL

---

[1] Texas courts have made the distinction that a "Nondisclosure and Intellectual Property Agreement" is "not an employment contract." *Ramachandran v. Jain*, No. 3:18-CV-00811-X, 2022 WL 102612, at *8 (N.D. Tex. Jan. 11, 2022).

2612731, at *7, 10 (S.D. Tex. Aug. 4, 2025) ("The record shows Texas has a substantial relationship to the parties and transaction. Expedited is a Texas limited-liability company and continues to base itself in Friendswood. Although Indiana, Florida, and Arizona also have interests (*i.e.*, where the parties reside and have performed), the court finds none have a "materially greater interest" than Texas, the parties' chosen law." (internal citations omitted)).

**Second**, the § 188 factors favor Texas: (a) the CIIAA was tendered from Houston and Defendant executed the CIIAA in Maryland—D.C. was not involved in contracting or negotiation; (b) the subject matter of the CIIAA—Axiom Space's Confidential Information, business strategy, and business interests—are created, maintained, and protected in Houston; (c) Axiom Space is headquartered in Houston while Defendant resides in Maryland and works a significant portion of the time from his home in Maryland—D.C. is neither party's domicile, nor Defendant's only place of activity subject to the CIIAA; and (d) the forum-selection clause (CIIAA § 14.1) designates Harris County, Texas. Defendant admits he was in D.C. only "two to three times per week" (Dkt. 27-1, ¶ 20), and when "performance by a party is to be divided more or less equally among two or more states" the "place of performance can bear little weight." *Aperia Sols., Inc. v. eVance, Inc.*, No. 3:18-CV-03276-X, 2022 WL 16935241, at *5 (N.D. Tex. Nov. 14, 2022).

**Third**, the noncompete is enforceable under Texas law, which mandates judicial reformation of restrictions as a backstop if needed. Tex. Bus. & Com. Code § 15.51(c). Texas law does not require 14-day advance notice, and the CIIAA's reformation clause (CIIAA § 7) adds further protection to enforce the agreement.

**Fourth**, Defendant's remaining arguments on confidentiality, non-solicitation, and duty of trust are contradicted by the record. The evidence shows that Defendant (i) forwarded Axiom Space proprietary Commercial Low Earth Orbit Destination ("CLD") appropriations materials to his personal Gmail account while actively seeking employment with Vast; (ii) began engaging Axiom Space's government stakeholders on behalf of Vast within days of his departure; and (iii) prepared a scope of work for Vast while still actively working on Axiom Space's response to NASA's CLD solicitation, a program for which Vast is a direct competitor.

## ARGUMENT

Defendant has filed three sets of briefings repeating the same choice-of-law analysis. The central error is Defendant's fixation on one party's *partial* place of performance while ignoring the rest of what § 188 requires a Court to consider.

This Court should apply Texas law to the CIIAA and grant Axiom Space's Motion. The record demonstrates that Defendant breached his contractual obligations by forwarding proprietary documents to his personal email, violated his

3

non-solicitation covenant by engaging Axiom Space's government stakeholders on behalf of a direct competitor, and betrayed his contractual duty of trust by pursuing employment with Vast all while misappropriating Confidential Information.

## A. Texas Law Governs the Agreement.

### 1. The Applicable Choice of Law Analysis Under § 188.

"Section 188 provides a list of the factors to consider when determining which state has the most significant relationship to the transaction and the parties," thereby determining which law should apply. *Realogy Holdings Corp. v. Jongebloed,* 957 F.3d 523, 533 n. 21 (5th Cir. 2020). Section 188 requires courts to weigh the following enumerated contacts—"(a) the place of contracting, (b) the place of negotiation, (c) the place of performance, (d) the location of the subject matter, and (e) the parties' domiciles, residences, and places of business." *Cardoni v. Prosperity Bank*, 805 F.3d 573, 582 (5th Cir. 2015) (citing Restatement § 188(2)).[2]

### 2. The CIIAA Is Distinct from other Documents Governing Defendant's Employment.

Though not a case on choice of law, *Ramachandran v. Jain*, No. 3:18-CV-00811-X, 2022 WL 102612, at *8 (N.D. Tex. Jan. 11, 2022), found that a "Nondisclosure and Intellectual Property Agreement" is "not an employment

---

[2] To be sure, even D.C. recognizes the validity and enforceability of noncompete agreements. *See* D.C. Code § 32-581.01 (providing definitions for D.C. laws regulating noncompete agreements, which by its terms, allows noncompetes where, as here, the Defendant makes over $150,000).

contract," *id.* at *8, thereby analyzing it separately from the underlying employment relationship. The same logic applies here.

The CIIAA is self-contained. Section 14.10 designates it as the "Entire Agreement" on confidentiality, non-compete, non-solicitation and inventions; it does not incorporate the offer letter or any other employment document. CIIAA § 14.10. The CIIAA says nothing about D.C., lobbying, or government relations. *Id*. It does not specify a place of work. *Id*. Defendant acknowledged it is "a separate" agreement from the employment offer. Dkt. 56-1, ¶ 11.

For agreements like the CIIAA, when reviewing the § 188 factors, courts have found persuasive facts showing where the protected interests and access to confidential information are centered. *See TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 749 (S.D. Tex. 2009). *TransPerfect* applied Texas law under a confidentiality and noncompete agreement where the employee "received confidential information from [Texas employer]," and employer "disclosed confidential information in both Georgia and Texas." *Id*. at 749. This conclusion was reached notwithstanding the former employee's contention "that Georgia law applies, because the agreement was signed in Georgia, [he] worked for eighteen months at TransPerfect in Georgia, and the majority of the services were allegedly provided to TransPerfect in Georgia." *Id*. at 748.

Defendant cites two cases that are distinguished because those cases involved actual employment contracts that specified the place of work or place of transaction. *Cardoni* involved contracts that "twice identify Tulsa as the place of performance." 805 F.3d at 583. Specifically, the "employment contracts" stated this:

> The bankers' duties are to "solicit and service loan and depository accounts/relationships ... associated with the locations of [Prosperity] *in and around Tulsa, Oklahoma*, which were previously locations of [F & M]." ROA.907 § 2.1. The contracts further provide that the bankers "*shall work in Tulsa, Oklahoma* and shall be furnished with an office and other business facilities and services[.]"

805 F.3d at 577 (emphases added).

And the agreement at issue in *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319 (Tex. 2014), was "a restricted-stock agreement" involving "bonus awards, awards of restricted stock options, and earnings bonus units," *id.* at 322, 326. So "the subject-matter of the transaction—XOM shares—are traded on the New York Stock Exchange and are valued based on the average of the high and low price of the shares as reported on the consolidated tape at the New York Stock Exchange in New York City." *Id.* at 324. No place of work or place of transaction is specified in the CIIAA, no employment contract is at issue, and the confidential information at issue in the CIIAA is centered in Texas.

6

### 3.  Application of the § 188 Factors.

#### a.  *Place of Contracting and Negotiation (§ 188(a)–(b)).*

The CIIAA was tendered from Axiom Space's Houston headquarters. Dkt. 49-4, ¶ 18. Defendant executed the CIIAA in Maryland. Dkt. 56-1, ¶ 15. There were no negotiations between the parties as to the CIIAA. It contains a Texas forum selection clause provision and does not mention or discuss D.C. This factor favors Texas—or at minimum is neutral between Texas and Maryland—but D.C. plays no part in this factor.

In *Chartwell Pharms. LLC v. Woodfield Pharm., LLC*, No. CV H-20-3640, 2022 WL 21825790 (S.D. Tex. June 17, 2022) (Hittner, J.) this Court treated this factor as neutral where parties "negotiated the Quality Agreement from their respective offices, in Houston and New York City," *id.* at *4, but critically, the factor did not favor any third state, so D.C. is irrelevant under this factor.

#### b.  *Place of Performance (§ 188(c))—Split Performance.*

Defendant argues D.C. law should apply because he performed lobbying duties there. This argument fails, and the split nature of his performance means this factor carries minimal weight.

**First**, as established above, the CIIAA is separate and distinct from any agreement governing Defendant's employment. Axiom Space's performance under the CIIAA—the provision and protection of Confidential Information, business

strategies, and business interests— is centered in Houston. Defendant performed his obligations under the CIIAA without regard to geography, including in Texas, Maryland, and D.C. The place-of-performance factor clearly favors Texas. *See TransPerfect*, 594 F. Supp. 2d at 749–756 ("Again, Texas has a strong interest in enforcing its residents' contracts and has an interest in TransPerfect as a national employer doing business in its state.").

**Second**, Defendant's activities were split across multiple jurisdictions. Defendant admits working in D.C. only "two to three times per week." Dkt. 27-1, ¶ 20. Meanwhile, he attended in-person meetings in Texas (Dkt. 49-4, ¶ 12), received confidential strategies from Axiom Space's Houston headquarters (Dkt. 49-4, ¶ 8), and engaged NASA individuals in Texas and the Texas Congressional Delegation, often from Maryland (Dkt. 49-4, ¶ 12).

As recognized by Texas courts, when "performance by a party is to be divided more or less equally among two or more states, this factor will not tip the scale either way" and "the place of performance can bear little weight" *Aperia*, 2022 WL 16935241, at *5 (citing § 188 cmt. e) (quotation marks omitted).

   *c.  Location of the Subject Matter of the Contract (§ 188(d)).*

The CIIAA's subject matter is Axiom Space's Confidential Information, business strategies, and business interests—largely created, maintained, and protected in Houston by Axiom Space. Dkt. 49-4, ¶¶ 8, 18. The alleged

misconduct—removal and misuse of confidential information—directly targets business operations, strategies, and competitive positioning that are centered in Texas, making Texas not merely Axiom Space's headquarters, but the focal point of the contractual relationship and the harm. *See id*. After all, that is where Axiom Space creates commercial-space-station technology and houses its mission control for private astronaut missions ("PAMs"). *See, e.g.*, *Priority Int'l Animal Concepts, Inc. v. Bryk*, No. 12-C-0150, 2012 WL 1854121, at *7 (E.D. Wis. May 21, 2012) (applying the same most significant relationship test, and applying Wisconsin law where company's "confidential information and trade secrets are maintained at its Wisconsin headquarters," thereby deeming these contacts as demonstrating "the most significant site for both performance of the contract and location of the contract's subject matter"). Texas overshadows Maryland and D.C.

This Court's *Chartwell* conclusion is consistent with this outcome, finding that Texas law applied based on the following: the "place of performance of the contract, *i.e.*, where the Drug would be manufactured and tested, was to be Woodfield's Houston facility. Thus, this factor weighs in favor of Texas law. The location of the Quality Agreement's subject matter, had it ever been produced, would have been the Woodfield facility in Texas." 2022 WL 21825790, at *4.

9

*d. Domicile and Place of Business of the Parties (§ 188(e)).*

Axiom Space is incorporated in Texas and headquartered in Houston, Texas. Defendant is domiciled in Maryland—not D.C. Neither party is domiciled, incorporated, or headquartered in D.C.

*e. The Forum-Selection Clause Helps Confirm the Analysis.*

Although the CIIAA lacks an express choice-of-law clause, Section 14.1 designates Harris County, Texas as the exclusive forum for disputes. CIIAA, ¶ 14.1. Though not technically a choice-of-law provision, this clause has relevance here.

The Fifth Circuit has recognized that "[c]hoice of law is often one of the reasons for obtaining a forum selection clause" and that "[e]ven in the absence of a choice-of-law clause, enforcement of a [jurisdiction's] forum selection clause frequently will result in the application of [that jurisdiction's] law to the dispute." *Haynsworth v. The Corp.*, 121 F.3d 956, 963, 967 (5th Cir. 1997).

A party "can hardly be shocked that Texas law applies" when the contract at issue was "specifically drafted to meet Texas law." *Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 178 (Tex. App.—Houston [14th Dist.] 2002, no pet.). That is because "Texas courts have also recognized that applying the law of the forum fosters certainty, predictability, and uniformity, if for no other reason than the forum court's familiarity with the forum's law." *Infrasource Constr., LLC v. Sturgis Mat Co.*, No. 4:19-CV-2672, 2021 WL 1200891, at *4 (S.D. Tex.

10

Feb. 26, 2021) (quoting *Bonn Operating Co. v. Devon Energy Prod. Co., LP,* No. CIV A 4:06-CV-734-Y, 2009 WL 484218, at *7 (N.D. Tex. Feb. 26, 2009)).

*f. The Totality of Contacts Overwhelmingly Favors Texas.*

In sum, the § 188 factors come together to favor Texas, especially given the split nature of Defendant's performance and the CIIAA's character as a standalone agreement rather than an employment contract. D.C. is not where either party is domiciled or headquartered; it is not where the CIIAA was executed or tendered; it is not where the subject matter of the CIIAA resides; and it is not where the forum-selection clause points.

Consistent with this analysis, courts in this District have found Texas law controls on similar facts. For example, *Expedited Freight* found that where a party "is a Texas limited-liability company and continues to base itself in [Texas]," the "record shows Texas has a substantial relationship to the parties and transaction," notwithstanding that "[a]lthough Indiana, Florida, and Arizona also have interests (i.e., where the parties reside and have performed)" because "the court finds none have a 'materially greater interest' than Texas." 2025 WL 2612731, at *7.

Likewise, in *Homolka v. Clark*, No. CV H-09-151, 2010 WL 11468921, at *3 (S.D. Tex. May 11, 2010) (Hittner, J.), *aff'd by* 416 F. App'x 408 (5th Cir. 2011), this Court explained that "[a]lthough Plaintiff identifies some Mississippi connections, including marketing activities and the origins of a small percentage of

11

the initial referral suits, those connections do not overcome the significant relationship this case has with Texas." Defendant's sole focus on one party's partial place of performance ignores the remaining § 188 analysis. All told, no single § 188 factor favors D.C., and several affirmatively favor Texas.

## B. The Noncompete Is Enforceable Under Texas Law.

"The Texas Supreme Court specifically held in *Alex Sheshunoff Management Services, L.P. v. Johnson* that if an employer provides confidential information to an employee who has promised in return to preserve the confidences of the employer, then a non-competition covenant executed as part of that agreement is enforceable." *Realogy*, 957 F.3d at 535 (citing *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 655 (Tex. 2006)). Here, Defendant does not contest that the CIIAA is a valid agreement under which Axiom Space agreed to provide access to sensitive business information and that the CIIAA contains a noncompete clause. In fact, Defendant himself declared that "I have and will continue to fully honor my non-disclosure and non-solicitation obligations under the Agreement." Dkt. 56-1, ¶ 48.

***14-day notice is not required.*** Citing D.C. Code § 32-581.03, Defendant argues the noncompete is void because it was not provided 14 days before employment began. Dkt. 56 at 10–11. But that D.C.-specific requirement has no analog in Texas. A noncompete is enforceable if it is "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made" and contains

12

reasonable limitations. Tex. Bus. & Com. Code § 15.50(a). Here, the CIIAA was ancillary to Axiom Space's provision of confidential information and specialized training—consideration that Defendant undisputedly received. *See* CIIAA §§ 1, 6. What is more, even if D.C. law applies, Defendant's own conduct—specifically his voluntary decision to sign without requesting additional time and continued performance in the face of a statutory right—constitutes a waiver or estoppel of the 14-day notice defense. *See Umana v. Swidler & Berlin, Chartered*, 745 A.2d 334, 344 (D.C. 2000) ("Parties to a contract of arbitration are deemed to know the relevant statutory law and jurisprudence concerning judicial review; this would be particularly so in the case of attorneys."); *see also Samenow v. Citicorp Credit Servs., Inc.*, 253 F. Supp. 3d 197, 204 (D.D.C. 2017) (knowledge of contract terms presumed upon assent).

***The scope is reasonable.*** The noncompete is reasonable as to time, geography, and scope. Defendant does not challenge the durational scope. And for good reason: one-year noncompete provisions are regularly enforced against employees with access to confidential information. *Sunrgy, LLC v. Alfaro,* No. 4:24-CV-3583, 2024 WL 4953430, at *5 (S.D. Tex. Dec. 3, 2024) (stating "Courts consistently enforce non-compete covenants of two years or less"). And though Defendant argues the "services, roles, industry, or competing entities" or the "geographical limitations" are vague (Dkt. 56 at 11–12), Axiom Space here only

13

seeks to have the noncompete provisions of the CIIAA enforced to the extent its scope is limited to businesses in Harris County and Washington, D.C. engaged in competitive opportunities for commercial space stations and PAMs. Dkt. 49-4, ¶ 16. Employment at Vast in D.C. is a redline that Defendant should have never crossed.

***The reformation Axiom Space seeks should be granted.*** If the restrictions in the CIIAA as written are deemed to be overbroad, the Court *must* reform them rather than void the agreement entirely. Tex. Bus. & Com. Code § 15.51(c) ("If the covenant is found to be ancillary to or part of an otherwise enforceable agreement but contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable . . . the court *shall* reform the covenant to the extent necessary." (emphasis added)).

For example, in *Expedited Freight*, the "court [] reform[ed] the scope of activity in the non-compete provision to restrict [former employee] from taking similar positions at competing businesses." 2025 WL 2612731, at *10. Effectively, the court ruled that the former employee "may not work in sales for a competing business in the automobile-freight brokerage industry for two years following his termination date." *Id*. "Having reformed the non-competition agreement into an enforceable one, the court finds [the former employer] has made a sufficient showing on the remaining breach-of-contract elements." *Id*. In addition, the court found the

14

"[former employer] performed by giving [former employee] the proprietary information and contacts he needed to fulfill his role." *Id*.

Independent of the statutory right to reformation, the CIIAA likewise provides for reformation. Under Section 7 of the CIIAA, the parties agree the noncompete will be automatically modified to afford Axiom Space the maximum protection of its business interests permitted by law, and that the Defendant will be bound by the noncompete as modified. *See* CIIAA § 7. And even D.C. courts recognize equitable reformation. *Steiner v. Am. Friends of Lubavitch (Chabad)*, 177 A.3d 1246, 1257 (D.C. 2018) ("We join the jurisdictions that have adopted the equitable reformation doctrine.")

## C. Defendant's Remaining Arguments Fail.

### 1. Defendant Breached His Confidentiality Obligations.

The evidence in this case establishes Defendant's breach—not through "inevitable disclosure," but through *direct evidence* of misuse. In its forthcoming Response to Defendant's Motion for Summary Judgment (Dkt. 50), Axiom Space will show that, on three occasions after initiating contact with Vast regarding employment, Defendant forwarded Axiom Space's CLD and xEVA spacesuit

15

appropriations documents to his personal Gmail account, any and all of which constitute Confidential Information under CIIAA § 1.2.

Critically, Axiom Space need not prove that Defendant disclosed to Vast. The CIIAA prohibits unauthorized retention as well as disclosure. CIIAA § 1.1. Defendant's act of forwarding proprietary documents to a personal email account—while simultaneously negotiating employment with a direct competitor—is itself a breach, regardless of what Defendant subsequently did with the material. *See, e.g.*, *First Command Fin. Planning, Inc. v. Velez*, No. 4:16-CV-01008-O, 2017 WL 2999405, at *6 n.4 (N.D. Tex. May 8, 2017) ("Velez emphasizes throughout his briefing that he is a friend or social acquaintance of many of the First Command clients whose contact information he retained. However, this does not alter the trade secret status of the confidential client information that he concedes he obtained solely through his affiliation with First Command. His retention of this information, even if he may be social acquaintances with some of the clients, still satisfies the definition of misappropriation.").

## 2. Defendant Breached His Non-Solicitation Obligations.

CIIAA § 5.2 prohibits Defendant from soliciting any "Customer" or "Potential Customer," defined to include any entity that contracted for, was billed for, or received from Axiom Space any product, service or process during Defendant's employment. *See* CIIAA § 5.2.

16

NASA contracts with Axiom Space for the PAM program, funds Axiom Space's CLD development, and procures xEVA spacesuits. *See* Dkt. 49-4, ¶¶ 2, 3, 6. Congressional offices authorize and appropriate the funding that sustains these programs. *See id.* at ¶ 12. These entities are "Customers" under the CIIAA § 5.2's definitions. *See* CIIAA § 5.2. Within days of joining Vast, Defendant represented Vast at a NASA budget hearing before the same Congressional committee with which he had cultivated relationships on Axiom Space's behalf. Dkt. 56-1, ¶ 46.

This is not a case where Defendant happened to encounter former contacts in the ordinary course of new employment. Defendant is affirmatively leveraging relationships he developed at Axiom Space's expense to advance a direct competitor's interests before the same government stakeholders. That is precisely what CIIAA § 5.2 prohibits.

### 3. Defendant Breached His Duty of Trust.

CIIAA § 4 imposes a duty of loyalty that encompasses conduct beyond mere disclosure of confidential information. *See* CIIAA § 4. Defendant's conduct violated this provision on multiple grounds.

The timeline is telling. Defendant contacted Vast about employment on March 4, 2026. Dkt. 56-1, ¶¶ 34–36. Five days later—on March 9—he prepared a scope of work for Vast that mirrors his responsibilities at Axiom Space while still employed by Axiom Space. Dkt. 49-4, ¶ 19. He also began forwarding Axiom Space's

confidential documents to his personal Gmail. Dkt. 49-4, ¶ 20. Defendant's conduct constitutes a breach of the CIIAA § 4 duty of trust independent of the confidentiality and non-solicitation violations. In doing so, he violated his trust obligations by entering the commercial space station and PAM markets in a position requiring him to access Confidential Information.

### 4. All Other Considerations Warrant Entry of an Injunction.

Axiom Space has also satisfied the remaining requirements for injunctive relief. Tex. Bus. & Com. Code §§ 15.50; 15.51 (authorizing injunctive relief to protect the "goodwill" and "business interest" of companies, going as far as directing courts to "reform" agreements when necessary).

Absent an injunction, Defendant's ongoing misuse and retention of Axiom Space's confidential information and his active efforts to leverage Axiom Space's government relationships on behalf of a direct competitor will cause irreparable harm that cannot be remedied by monetary damages alone. "In Texas, injury resulting from the breach of non-compete covenants is the epitome of irreparable injury." *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 569 (S.D. Tex. 2014) (quoting *A & A Global Indus., Inc. v. Wolfe*, No. 01-cv-01515, 2001 WL 1388020, at *5 (N.D. Tex. Nov. 6, 2001)). Consistent with that principle, courts in this district "grant[ed] injunctive relief when former employee with knowledge of confidential information and trade secrets took similar job working for competitor." *Id*. at 570

18

(citing *Baker Petrolite Corp. v. Spicer,* Civ. A. No. 06–1749, 2006 WL 1751786, at *9–10 (S.D. Tex. June 20, 2006)).

The balance of equities overwhelmingly favors Axiom Space, which seeks only to enforce contractual obligations that Defendant knowingly undertook, while Defendant faces no legitimate hardship from being required to comply with those obligations. As adjudicated by the court in *Daily Instruments*, the "threatened injury to [former employer] if a preliminary injunction does not issue far outweighs any potential harm caused to Defendants by the issuance of an injunction." 998 F. Supp. 2d at 570. This is because "Defendants' continued wrongful conduct will result in [former employer] facing a substantial risk of losing customers it otherwise would have had and an erosion of its goodwill, losses that are difficult or impossible to quantify by monetary damages." *Id*.

Finally, the public interest is served by enforcing valid contracts and protecting confidential business information, particularly in highly competitive, government-facing industries. *Daily Instruments*, 998 F. Supp. 2d at 571 (granting injunction based on noncompetition agreement because "it is in the public interest to uphold contracts and to enforce a remedy that is provided for by Texas law") (citing *AmeriSpec, Inc. v. Metro Inspection Servs., Inc.,* CIV.A. 3:01–CV–0946–D, 2001 WL 770999, at *6 (N.D. Tex. July 3, 2001)).

19

**CONCLUSION**

Axiom Space respectfully requests that this Court (1) apply Texas law to the CIIAA; (2) grant Axiom Space's Motion for Preliminary and Permanent Injunction; and (3) enjoin Defendant from continuing to violate the CIIAA's noncompete, confidentiality, non-solicitation, and duty-of-trust provisions.

Dated: June 12, 2026

Respectfully submitted,

KING & SPALDING LLP

*/s/ Jesse Snyder*
Veronica Moyé
Texas Bar No. 24000092
Mu Lin Hsu
Texas Bar No. 24106118
2601 Olive Street Suite 2300
Dallas, TX 75201
Telephone: 214.764.4600
Facsimile: 214.764.4601
vmoye@kslaw.com
chsu@kslaw.com

Jesse Snyder
Texas Bar No. 24083884
1700 Pennsylvania Avenue, NW Suite 900
Washington, DC 20006-4707
Telephone: 202.737.0500
Facsimile: 202.626.3737
jsnyder@kslaw.com

**Attorneys for Axiom Space, Inc.**

20

## CERTIFICATE OF SERVICE

I certify that on the date of this filing, all counsel of record were served with a copy of this document.

*/s/ Jesse Snyder*
Jesse Snyder